IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| ALAN FEEDING LLC, a Wyoming limited liability company, POULTRY LLC, an Idaho limited liability company.<br><br>　　　Plaintiffs,<br><br>v.<br><br>AMIR SOFER, an individual, ABA AGRO LLC, a Wyoming limited liability company, AGROVIUM OC LLC, a Wyoming limited liability company, AGROVIUM HC LLC, a Wyoming limited liability company, BIOPRIME LLC, a Wyoming limited liability company and ORGANIX INNOVATIONS LLC, a Wyoming limited liability company.<br><br>　　　Defendants. | CASE NO.: 9:26-cv-80894 |

## **VERIFIED COMPLAINT**

Plaintiffs, ALAN FEEDING LLC, a Wyoming limited liability company, and POULTRY LLC, an Idaho limited liability company (collectively, "*Plaintiffs*"), hereby sue Defendants, AMIR SOFER, an individual, ABA AGRO LLC, a Wyoming limited liability company, AGROVIUM OC LLC, a Wyoming limited liability company, AGROVIUM HC LLC, a Wyoming limited liability company, BIOPRIME LLC, a Wyoming limited liability company, and ORGANIX INNOVATIONS LLC, a Wyoming limited liability company (collectively "*Defendants*") and allege as follows:

## PARTIES

1.      Plaintiff, ALAN FEEDING LLC (hereinafter, "ALAN FEEDING"), is a single-member limited liability company organized under the laws of Wyoming, with its principal place of business located in Lockhart, Texas. ALAN FEEDING's sole member is Alan Floyd, an individual and natural person, who is, and was at all relevant times hereto, a permanent resident of Caldwell County, Texas.[1]

2.      Plaintiff, POULTRY LLC (hereinafter, "POULTRY"), is a single-member limited liability company organized under the laws of Idaho, with its principal place of business located in Jerome, Idaho. POULTRY's sole member is Tom Floyd, an individual and natural person, who is, and was at all relevant times hereto, a permanent resident of Jerome County, Idaho.[2]

3.      Defendant, ABA AGRO LLC (hereinafter, "ABA AGRO"), is, and was at all relevant times hereto, a limited liability company organized under the laws of Wyoming, with its principal place of business address located at 30 N. Gould St., Suite R, Sheridan, Wyoming, and with its headquarters located in Boca Raton, Florida. Despite ABA AGRO having its principal place of business address located in Sheridan, Wyoming, ABA AGRO is, and was at all times relevant hereto, not registered as a foreign corporation authorized to conduct business in the State of Florida.

---

[1] *McCormick v. Aderholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002).
[2] *Id.*

4. Defendant, BIOPRIME LLC (hereinafter, "BIOPRIME"), is, and was at all relevant times hereto, a limited liability company organized under the laws of Wyoming, with its principal place of business address located at 30 N. Gould St., Suite R, Sheridan, Wyoming, and with its headquarters located in Boca Raton, Florida. Despite BIOPRIME having its principal place of business address located in Sheridan, Wyoming, BIOPRIME is, and was at all times relevant hereto, not registered as a foreign corporation authorized to conduct business in the State of Florida.

5. Defendant, AGROVIUM OC LLC (hereinafter, "AGROVIUM OC"), is, and was at all relevant times hereto, a limited liability company organized under the laws of Wyoming, with its principal place of business address located at 30 N. Gould St., Suite R, Sheridan, Wyoming, and with its headquarters located in Boca Raton, Florida. Despite AGROVIUM OC having its principal place of business address located in Sheridan, Wyoming, AGROVIUM OC is, and was at all times relevant hereto, not registered as a foreign corporation authorized to conduct business in the State of Florida.

6. Defendant, AGROVIUM HC LLC (hereinafter, "AGROVIUM HC"), is, and was at all relevant times hereto, a limited liability company organized under the laws of Wyoming, with its principal place of business address located at 30 N. Gould St., Suite R, Sheridan, Wyoming, and with its headquarters located in Boca Raton, Florida. Despite AGROVIUM HC having its principal place of business address located in Sheridan, Wyoming, AGROVIUM HC is, and was at all times relevant

hereto, not registered as a foreign corporation authorized to conduct business in the State of Florida.

7.     Defendant, ORGANIX INNOVATIONS LLC (hereinafter, "ORGANIX"), is, and was at all relevant times hereto, a limited liability company organized under the laws of Wyoming, with its principal place of business address located at 30 N. Gould St., Suite R, Sheridan, Wyoming, and with its headquarters located in Boca Raton, Florida. Despite ORGANIX having its principal place of business address located in Sheridan, Wyoming, ORGANIX is, and was at all times relevant hereto, not registered as a foreign corporation authorized to conduct business in the State of Florida.

8.     Defendant, AMIR SOFER (hereinafter, "SOFER"), is and individual and natural person, who is, and was at all relevant times hereto, a permanent resident of Palm Beach County, Florida, and is otherwise *sui juris*. SOFER is, and was at all relevant times hereto, a founding member, corporate officer, director, and/or principal of: ABA AGRO; BIOPRIME; AGROVIUM OC; AGROVIUM HC; and ORGANIX.

9.     Defendants, ABA AGRO; BIOPRIME; AGROVIUM OC; AGROVIUM HC; and ORGANIX are sometimes collectively referred to herein as the "ALTER-EGO DEFENDANTS".

## JURISDICTION AND VENUE

10.     This Court has general and specific jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the Plaintiffs and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

11.     This Court has general and specific jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331 and § 27 of the Securities Exchange Act of 1934 (the "*Exchange Act*") because certain claims asserted herein arise under § 10(b) and § 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

12.     This Court has supplemental jurisdiction over the claims asserted herein under 28 U.S.C. § 1367(a) because such claims that are so related to claims in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2), 28 U.S.C. § 1391(b)(2), and 28 U.S.C. § 1391(c)(2), because SOFER resides in this District; because Defendants operated, conducted, engaged in, or carried on a business or business venture(s) in this District; because Defendants engaged in substantial and not isolated business activities in this District; and because Defendants committed tortious acts within this District, each tortious act being specifically alleged herein.

14.     All conditions precedent to this filing of this suit have been performed or have occurred.

## **GENERAL ALLEGATIONS**

15.    This action is the result of a calculated and continuing scheme undertaken by Defendant, SOFER, and carried out in concert with and through non-party, Benjamin Kaye ("KAYE"), an individual and natural person who permanently resides in the United Kingdom, and SOFER's network of affiliated companies to raise investment capital on the strength of intellectual property rights Defendants did not own, did not license, and could not convey.

16.    Defendant, SOFER, acting with and through KAYE, represented that SOFER, through his network of affiliated companies, had obtained the intellectual property rights to carry out the development, manufacturing, and commercialization of certain agricultural products, namely "Absorvia" and "PrimeButyrin", under the guise of a "Master License", the rights of which were allegedly assigned and memorialized in a purported Exclusive License Agreement.

17.    Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, solicited certain agricultural businesses to invest in a new agricultural technology company, AGROVIUM OC.

18.    In their representations to potential investors, including Plaintiffs, Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, embellished the business stature of Defendant, AGROVIUM OC by exaggerating the credibility and capabilities of Defendant, AGROVIUM OC, namely, the "extensive range of cutting-edge agricultural products designed by AGROVIUM for farmers and live-stock producers", and that "AGROVIUM has 500+

trusted agricultural partners and is currently active in 13 countries with production in the [United States of America], Israel, United Kingdom, and the European Union".[3]

19.     Notably, in their representations to potential investors, including Plaintiffs, Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, represented that the investment capital would be used to fund the manufacturing, distribution and product trials for those certain agricultural products, "Absorvia" and "PrimeButyrin".

20.     On the strength of the representations made to Plaintiffs by Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, Plaintiffs, in reliance on the representations, invested and/or secured investment capital of approximately $1,250,000.00 and tendered same to Defendants.

21.     Following Plaintiffs having relied on the representations made by Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, in investing and/or securing investment capital of approximately $1,250,000.00 and tendering same to Defendants, only to then discover shortly thereafter that the representations made to Plaintiffs were nothing more than a mirage.

---

[3] (https://www.agrovium.com/about-us/) (June 22, 2026).

22. Upon information and belief, and despite representations to the contrary by Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, Defendants never obtained a "Master License" for the intellectual property rights to carry out the development, manufacturing, and commercialization of certain agricultural products, namely "Absorvia" and "PrimeButyrin".

23. Upon information and belief, and at all relevant times hereto, following Plaintiffs having invested and/or secured investment capital of approximately $1,250,000.00 and tendering same to Defendants, Plaintiffs were contacted by Ido Eco Ofek ("OFEK"), an individual and natural person, who advised Plaintiffs that he was the actual developer and owner of the intellectual property rights of the agricultural products "Abzorbia" and "PrimeButyrin".

24. Upon information and belief, and at all relevant times hereto, OFEK advised Plaintiffs that prior to Plaintiffs having invested and/or secured investment capital of approximately $1,250,000.00 and tendering same to Defendants, OFEK had prior business discussions with SOFER and KAYE, under the protection of a non-disclosure and confidentiality agreement, in which OFEK had disclosed confidential and proprietary information related to the agricultural products "Abzorbia" and "PrimeButyrin" in connection with a possible business venture; however, no such agreement between OFEK and Defendant, SOFER, acting with and through KAYE, and/or SOFER's network of affiliated companies, ever materialized nor was any such agreement ever memorialized.

25. Upon information and belief, and at all relevant times hereto, OFEK further advised Plaintiffs that following Plaintiffs having invested and/or secured investment capital of approximately $1,250,000.00 and tendering same to Defendants, OFEK became aware that a product named "Absorvia" was being solicitated by Defendant, AGORIUM OC, through Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, to potential investors, including Plaintiffs.

26. Upon information and belief, and at all relevant times hereto, OFEK further advised Plaintiffs that the agricultural product "Absorbia" contains the same formulations, ingredient combinations and ratios, know-how, trade secrets, technical information, manufacturing methods, process notes, SOPs, testing results, development materials, product concepts, business methods, and commercialization that were previously disclosed by OFEK, under the protection of a non-disclosure and confidentiality agreement, to Defendant, SOFER, acting with and through KAYE, and/or SOFER's network of affiliated companies, related to the agricultural products "Abzorbia".

27. Upon information and belief, and at all relevant times hereto, OFEK further advised Plaintiffs that at no time did OFEK assign ownership of the intellectual property rights related to the agricultural product "Abzorbia" to Defendant, AGROVIUM OC, Defendant, AGROVIUM OC, Defendant, BIOPRIME, Defendant, ABA AGRO, Defendant, SOFER, and/or any of SOFER's network of affiliated companies.

28.    Upon information and belief, and at all relevant times hereto, OFEK further advised Plaintiffs that at no time did OFEK license the intellectual property rights related to the agricultural product "Abzorbia" to Defendant, AGROVIUM OC, Defendant, AGROVIUM OC, Defendant, BIOPRIME, Defendant, ABA AGRO, Defendant, SOFER, and/or any of SOFER's network of affiliated companies.

29.    In like manner, and upon information and belief, and at all relevant times hereto, OFEK further advised Plaintiffs that at no time did OFEK assign ownership of the intellectual property rights related to the agricultural product "PrimeButyrin" to Defendant, AGROVIUM OC, Defendant, AGROVIUM OC, Defendant, BIOPRIME, Defendant, ABA AGRO, Defendant, SOFER, and/or any of SOFER's network of affiliated companies.

30.    In like manner, and upon information and belief, and at all relevant times hereto, OFEK further advised Plaintiffs that at no time did OFEK license the intellectual property rights related to the agricultural product "PrimeButyrin" to Defendant, AGROVIUM OC, Defendant, AGROVIUM OC, Defendant, BIOPRIME, Defendant, ABA AGRO, Defendant, SOFER, and/or any of SOFER's network of affiliated companies.

31.    Upon information and belief, and at all relevant times hereto, following Plaintiffs having become aware that Defendants did not obtain the intellectual property rights to carry out the development, manufacturing, and commercialization of certain agricultural products, namely "Absorvia" and "PrimeButyrin", and despite Defendant, SOFER, acting with and through KAYE, and through SOFER's network

of affiliated companies, having represented to Plaintiffs otherwise, and Plaintiffs having relied on the representations to their detriment, Plaintiffs have become aware that Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies,  continue to actively expend investor funds by engaging third-parties to provide services, facilities, product trials, and/or related activities in connection with certain agricultural products, namely "Absorvia" and "PrimeButyrin",  despite Defendants having no such rights to develop, manufacture, distribute and/or sell the respective agricultural product(s), "Absorvia" and/or "PrimeButyrin".

32.     Upon the discovery of the fraudulent misrepresentations made on behalf of Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies to Plaintiffs, and prior to instituting this action, Plaintiffs requested Defendants for a rescission of their respective Subscription Agreement(s) and/or Operating Agreement(s), and for the immediate return of the investment capital previously tendered by and/or on behalf of Plaintiffs to Defendants, to no avail.

33.     All conditions precedent to the filing and maintenance of the causes of actions asserted herein have occurred, have been waived, or have been discharged or otherwise satisfied.

34. Plaintiffs have retained the undersigned firm of the WLG Firm, PLLC and have incurred attorneys' fees and costs for which they are entitled to be reimbursed from Defendants as provided for by the related agreement(s), and under applicable Federal and Florida statute(s) and controlling case law.

## COUNT I

### PIERCING THE CORPORATE VEIL[4]
### (PLAINTIFFS AGAINST ALTER-EGO DEFENDANTS)

Plaintiffs seek a declaratory judgment determining that Defendants, AGROVIUM OC, AGROVIUM HC, ABA AGRO, BIOPRIME, and OGRANIX INNOVATIONS (collectively, the "ALTER-EGO DEFENDANTS") are the alter-ego of Defendant, SOFER, and allege that:

35. Plaintiffs re-allege and incorporate by reference paragraphs 1-34 as if fully set forth herein.

36. Upon information and belief, Defendant, SOFER, has developed an intricate web of deceit through the creation of interrelated entities that are each alter egos of one another.

37. Upon information and belief, Defendant, SOFER, uses the ALTER-EGO DEFENDANTS to insulate Defendant, SOFER, from any such liability.

---

[4] *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114, 1117 (Fla. 1984).

38.     Upon information and belief, Defendant, SOFER, owns, operates, dominates, and/or controls the ALTER-EGO DEFENDANTS to such an extent that they have no corporate existence independent of one another or Defendant, SOFER, their alter-ego.

39.     At all times relevant hereto, the ALTER-EGO DEFENDANTS have common ownership, as Defendant, SOFER, owns and/or maintains an ownership interest in the ALTER-EGO DEFENDANTS.

40.     At all times relevant hereto, Defendant, SOFER, caused and/or directed the formation of each of the ALTER-EGO DEFENDANTS.

41.     At all times relevant hereto, the ALTER-EGO DEFENDANTS have common directors or officers, as Defendant, SOFER, is a corporate officer, director, and/or principal of each of the ALTER-EGO DEFENDANTS.

42.     At all times relevant hereto, the ALTER-EGO DEFENDANTS all share a principal place of business address located at 30 N. Gould St., STE R, Sheridan, WY 82801.

43.     At all times relevant hereto, the ALTER-EGO DEFENDANTS share the same website domain of "www.agrovium.com".

44.     At all times relevant hereto, the daily business operations of the ALTER-EGO DEFENDANTS are not kept separate.

45.     At all times material hereto, the ALTER-EGO DEFENDANTS do not observe corporate formalities such as keeping separate books and records and holding shareholder meetings.

46.     At all times relevant hereto, there is a lack of any independent business derived from the ALTER-EGO DEFENDANTS except that of which is inextricably intertwined with or handed down from Defendant, SOFER.

47.     At all times relevant hereto, funds and assets are commingled between the ALTER-EGO DEFENDANTS.

48.     As set forth herein, Defendant, SOFER, operates, dominates, and controls each of the ALTER-EGO DEFENDANTS as a single business entity to such an extent that the ALTER-EGO DEFENDANTS' existence was in effect, non-existent.

49.      Defendant, SOFER, as set forth herein, used the corporate form of the ALTER-EGO DEFENDANTS for an improper purpose and as mere devices to engage in improper conduct to obtain a financial benefit to the detriment of Plaintiffs.

50.     Moreover, upon information and belief, the ALTER-EGO DEFENDANTS, individually, likely do not maintain sufficient assets to pay any such monetary judgment award in favor of Plaintiffs.

51.     All things considered, allowing the corporate form of the ALTER-EGO DEFENDANTS to insulate Defendant, SOFER, in any way from liability would sanction an injustice against Plaintiffs.

**WHEREFORE**, Plaintiffs demand a declaratory judgment that the ALTER-EGO DEFENDANTS are alter-egos of Defendant, SOFER, and therefore declare the ALTER-EGO DEFENDANTS, and Defendant, SOFER, jointly and severally liable for any such monetary judgment awarded against the ALTER-EGO DEFENDANTS,

and/or Defendant, SOFER, and in favor of Plaintiffs, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

## COUNT II

## VIOLATION OF § 10(b) OF THE EXCHANGE ACT[5]
### (POULTRY against AGROVIUM OC, ABA AGRO and SOFER)

Plaintiff, POULTRY, sues Defendants, AGROVIUM OC, ABA AGRO and SOFER, jointly and severally, and alleges that:

52.   This is an action for damages that are within the jurisdiction of this Court.

53.   Plaintiff re-alleges and incorporates by reference paragraphs 1-34 as if fully set forth herein.

54.   Defendant, SOFER, acting with and through KAYE, represented that SOFER, through his network of affiliated companies, had obtained the intellectual property rights to carry out the development, manufacturing, and commercialization of certain agricultural products, namely "Absorvia" and "PrimeButyrin", under the guise of a "Master License", the rights of which were allegedly assigned and memorialized in a purported Exclusive License Agreement.

55.   Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, solicited POULTRY to invest in a new agricultural technology company, Defendant, AGROVIUM OC.

---

[5] *Meyer v. Greene, 710 F.3d 1189, 1194 (11th Cir. 2013)*

56.    In their representations to potential investors, including Plaintiffs, Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, embellished the business stature of AGROVIUM OC by exaggerating the credibility and capabilities of AGROVIUM OC, namely, the "extensive range of cutting-edge agricultural products designed by AGROVIUM for farmers and live-stock producers", and that "AGROVIUM has 500+ trusted agricultural partners and is currently active in 13 countries with production in the [United States of America], Israel, United Kingdom, and the European Union". [6].

57.    Notably, in their representations to potential investors, including POULTRY, Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, represented that the investment capital would be used to fund the manufacturing, distribution and product trials for those certain agricultural products, "Absorvia" and "PrimeButyrin".

58.    In connection with the purchase and sale of the respective securities, Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, made these representations to POULTRY with the purpose and expectation that the representations would be relied upon by POULTRY and would induce POULTRY to purchase the membership units in and to Defendant, AGROVIUM OC.

---

[6] (https://www.agrovium.com/about-us/) (June 22, 2026).

59.     On the strength of the representations made to POULTRY by Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, POULTRY, in justifiable reliance on the representations, agreed to an initial investment amount of $250,000.00 in exchange for 100,000 membership units in and to Defendant, AGROVIUM OC.

60.     In connection therewith, POULTRY entered into a Subscription Agreement with Defendant, AGROVIUM OC, on March 24, 2026, whereby memorializing the purchase and sale of the respective securities, in which $250,000.00 was the stated subscription amount for POULTRY's acquisition and retention of 100,000 membership units in and to Defendant, AGROVIUM OC; a copy of the Subscription Agreement is attached hereto as Exhibit "1".

61.     Pursuant to the Subscription Agreement, while the $250,000.00 was the stated subscription amount, of the 100,000 membership units, 50,000 membership units were designated as "base units" and were to be received by POULTRY upon the investment amount of $250,000.00 being received by Defendant, AGROVIUM OC, the other 50,000 membership units were designated as "conditional units" and were conditioned on an additional aggregate investment amount of $1,000,000.00 being tendered to Defendant, ABA AGRO (the "Investment Condition"); in the event POULTRY failed to satisfy the Investment Condition, the 50,000 membership units designated as "conditional units" would be forfeited to Defendant, AGROVIUM HC.

62.     On the strength of the representations made to POULTRY by Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, and in connection with the express representations contained within the Subscription Agreement, POULTRY, in justifiable reliance on the representations, secured an additional aggregate investment amount of $1,000,000.00 and tendered same to Defendant, ABA AGRO, in exchange for POULTRY's acquisition and retention of the 50,000 membership units designated as "conditional units".

63.     In connection with the purchase and sale of the respective membership units in and to Defendant, AGROVIUM OC, the representations made to POULTRY by Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, representations made by use of the means and instrumentalities of interstate commerce, were false when they were made to POULTRY.

64.     In connection with the purchase and sale of the respective membership units in and to Defendant, AGROVIUM OC, Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, knowingly and/or recklessly made untrue statements of material fact and/or omitted material facts to POULTRY, notably, that Defendants had obtained the intellectual property rights to carry out the development, manufacturing, and commercialization of certain agricultural products, namely "Absorvia" and "PrimeButyrin", under the guise of a "Master License", which Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, knew that Defendants

18

did not own the intellectual property rights for certain agricultural products, namely "Absorvia" and "PrimeButyrin", and further, that Defendants did not obtain the requisite license necessary to commercialize certain agricultural products, namely "Absorvia" and "PrimeButyrin".

65. Moreover, Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, employed devices, schemes, and artifices to defraud, and engaged in acts, practices, and a course of business that operated as a fraud upon POULTRY, in violation of Rule 10b-5(a) and (c), notably, Defendants structuring the Investment Condition to extract an additional $1,000,000 from POULTRY for the benefit of Defendant, ABA AGRO, as a condition of POULTRY's equity in and to Defendant, AGROVIUM OC; whereby causing Defendant, ABA AGRO, to accept and retain POULTRY's additional investment amount of $1,000,000 without Defendant, ABAB AGRO, issuing securities in connection therewith, executing any such instrument, or providing consideration whatsoever.

66. The false and fraudulent representations intentionally made by Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, were material to POULTRY's decision to purchase 100,000 membership units in and to Defendant, AGROVIUM OC, and enter into the Subscription Agreement with Defendant, AGROVIUM OC.

67.     If POULTRY had known that Defendants did not own the intellectual property rights for certain agricultural products, namely "Absorvia" and "PrimeButyrin", and further, that Defendants did not obtain the requisite license necessary to commercialize certain agricultural products, namely "Absorvia" and "PrimeButyrin", then POULTRY would not have secured and subsequently tendered a total aggregate investment amount of $1,250,000.00 to Defendants, nor enter into the Subscription Agreement with Defendant, AGROVIUM OC.

68.     As a direct and proximate result of the false and fraudulent representations made to POULTRY by Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, POULTRY, has suffered damages, and continues to suffer damages in the total aggregate investment amount of $1,250,000.00.

69.     Moreover, due to Defendant, SOFER, operating the ALTER-EGO DEFENDANTS as a single business entity, POULTRY asserts this claim against all the Alter Ego Defendants.

**WHEREFORE**, Plaintiff, POULTRY, demands judgment for damages against Defendants, AGROVIUM OC, ABA AGRO, SOFER, and the ALTER-EGO DEFENDANTS, jointly and severally, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

## COUNT III

### VIOLATIONS OF § 20(a) OF THE EXCHANGE ACT[7]
### (POULTRY against SOFER and ALTER-EGO DEFENDANTS)

Plaintiff, POULTRY, sues Defendant, SOFFER, and the ALTER-EGO DEFENDANTS, jointly and severally, and alleges that:

70.     This is an action for damages that are within the jurisdiction of this court.

71.     POULTRY re-alleges and incorporates by reference paragraphs 1-69 as if fully set forth herein.

72.     Defendant, SOFER, acting with and through KAYE, possessed, exercised, and acted as controlling person of Defendant, AGROVIUM OC, and Defendant, ABA AGRO, within the meaning of § 20(a) of the Exchange Act.

73.     At all relevant times hereto, Defendant, SOFER, acting with and through KAYE, had the power to direct and control the management, policies, communications, and specific conduct of Defendant, AGROVIUM OC, and Defendant, ABA AGRO, and did influence and control, directly or indirectly, the decision making of Defendant, AGROVIUM OC, and Defendant, ABA AGRO, including the dissemination of the various statements related to the intellectual property rights related to the certain agricultural products, namely, "Absorbia" and "PrimeButryn", which POULTRY contends are false, and Defendant, SOFER, had the ability to cause the statements giving rise the violations to be corrected.

---

[7] *Metropolitan Life Ins. Co. v. Liebowitz*, 2022 WL 833635, *9 (M.D. Fla. Mar. 21, 2022);

74. Accordingly, Defendant, SOFER, acting with and through KAYE, and the ALTER-EGO DEFENDANTS, each violated § 10(b) of the Exchange Act and Rule 10b-5 for their acts and omissions.

75. By virtue of their controlling positions, Defendant, SOFER, acting with and through KAYE, and the ALTER-EGO DEFENDANTS, are jointly and severally liable under § 20(a) of the Exchange Act.

76. As a direct and proximate result of the false and fraudulent representations made to POULTRY by Defendant, SOFER, acting with and through KAYE, and through the ALTER EGO DEFENDANTS, POULTRY, has suffered damages, and continues to suffer damages in the total aggregate investment amount of $1,250,000.00.

**WHEREFORE**, Plaintiff, POULTRY, demands judgment for damages against Defendants, SOFER, and the ALTER-EGO DEFENDANTS, jointly and severally, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

## COUNT IV
### FRAUDULENT MISREPRESENTATION[8]
### (POULTRY against AGROVIUM OC, ABA AGRO and SOFER)

Plaintiff, POULTRY, sues Defendants, AGROVIUM OC, ABA AGRO and SOFER, jointly and severally, and alleges that:

77. This is an action for damages that are within the jurisdiction of this court.

---

[8] *Metropolitan Life Ins. Co. v. Liebowitz*, 2022 WL 833635, *9 (M.D. Fla. Mar. 21, 2022);

78.    Plaintiff re-alleges and incorporates by reference paragraphs 1-34 as if fully set forth herein.

79.    Defendant, SOFER, acting with and through KAYE, represented that SOFER, through his network of affiliated companies, had obtained the intellectual property rights to carry out the development, manufacturing, and commercialization of certain agricultural products, namely "Absorvia" and "PrimeButyrin", under the guise of a "Master License", the rights of which were allegedly assigned and memorialized in a purported Exclusive License Agreement.

80.    Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, solicited POULTRY to invest in a new agricultural technology company, Defendant, AGROVIUM OC.

81.    In their representations to POULTRY, Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, embellished the business stature of Defendant, AGROVIUM OC, by exaggerating the credibility and capabilities of Defendant, AGROVIUM OC, namely, the "extensive range of cutting-edge agricultural products designed by AGROVIUM for farmers and live-stock producers", and that "AGROVIUM has 500+ trusted agricultural partners and is currently active in 13 countries with production in the [United States of America], Israel, United Kingdom, and the European Union". [9]

---

[9] (https://www.agrovium.com/about-us/) (June 22, 2026).

82. Notably, in their representations to POULTRY, Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, represented that the investment capital would be used to fund the manufacturing, distribution and product trials for those certain agricultural products, "Absorvia" and "PrimeButyrin".

83. Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, made those representations to POULTRY with the purpose and expectation that the representations would be relied upon by POULTRY and would induce POULTRY to purchase membership units and enter into the Subscription Agreement.

84. On the strength of the representations made to POULTRY by Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, POULTRY, in justifiable reliance on the representations, invested and/or secured investment capital of approximately $1,250,000.00 and tendered same to Defendants.

85. Defendant, AGROVIUM OC, Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, knew and/or recklessly made the material representations to POULTRY, notably, that Defendants had obtained the intellectual property rights to carry out the development, manufacturing, and commercialization of certain agricultural products, namely "Absorvia" and "PrimeButyrin", under the guise of a "Master License", which Defendant, SOFER, acting with and through KAYE, and through SOFER's network

of affiliated companies, knew that Defendants did not own the intellectual property rights for certain agricultural products, namely "Absorvia" and "PrimeButyrin", and further, that Defendants did not obtain the requisite license necessary to commercialize certain agricultural products, namely "Absorvia" and "PrimeButyrin".

86.    Defendant, AGROVIUM OC, Defendant, SOFER, acting with and through KAYE, and the ALTER EGO DEFENDANTS, intended for POULTRY to rely upon the representations in agreeing to tender the total aggregate investment amount of $1,250,000 to Defendants and in entering into the Subscription Agreement.

87.    If POULTRY had known that Defendants did not own the intellectual property rights for certain agricultural products, namely "Absorvia" and "PrimeButyrin", and further, that Defendants did not obtain the requisite license necessary to commercialize certain agricultural products, namely "Absorvia" and "PrimeButyrin", then POULTRY would not have secured and subsequently tendered a total aggregate investment amount of $1,250,000.00 to Defendants, nor enter into the Subscription Agreement with Defendant, AGROVIUM OC.

88.    As a direct and proximate result of the false and fraudulent representations made to POULTRY by Defendant, SOFER, acting with and through KAYE, and through the ALTER EGO DEFENDANTS, POULTRY, has suffered damages, and continues to suffer damages in the total aggregate investment amount of $1,250,000.00.

**WHEREFORE**, Plaintiff, POULTRY, demands judgment for damages against Defendants, AGROVIUM OC, ABA AGRO, SOFER, and the ALTER-EGO DEFENDANTS, jointly and severally, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

## COUNT V
## RESCISSION[10]
### (POULTRY against AGROVIUM OC)

Plaintiff, POULTRY, sues Defendant, AGROVIUM OC, and alleges that:

89.    This is an action for damages that are within the jurisdiction of this Court.

90.    Plaintiff re-alleges and incorporates by reference paragraphs 1-34 as if fully set forth herein.

91.    Defendant, SOFER, acting with and through KAYE, represented that SOFER, through his network of affiliated companies, had obtained the intellectual property rights to carry out the development, manufacturing, and commercialization of certain agricultural products, namely "Absorvia" and "PrimeButyrin", under the guise of a "Master License", the rights of which were allegedly assigned and memorialized in a purported Exclusive License Agreement.

92.    Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, solicited POULTRY to invest in a new agricultural technology company, Defendant, AGROVIUM OC.

---

[10] [10] *Perna v. Am. Campus Cmtys, Inc.*, 2022 WL 1689083, *3-5 (M.D. Fla. May 26, 2022);

93. In their representations to POULTRY, Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, embellished the business stature of Defendant, AGROVIUM OC, by exaggerating the credibility and capabilities of Defendant, AGROVIUM OC, namely, the "extensive range of cutting-edge agricultural products designed by AGROVIUM for farmers and live-stock producers", and that "AGROVIUM has 500+ trusted agricultural partners and is currently active in 13 countries with production in the [United States of America], Israel, United Kingdom, and the European Union". [11]

94. Notably, in their representations to POULTRY, Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, represented that the investment capital would be used to fund the manufacturing, distribution and product trials for those certain agricultural products, "Absorvia" and "PrimeButyrin".

95. Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, made those representations to POULTRY with the purpose and expectation that the representations would be relied upon by POULTRY and would induce POULTRY to purchase membership units and enter into the Subscription Agreement.

---

[11] (https://www.agrovium.com/about-us/) (June 22, 2026).

96. On the strength of the representations made to POULTRY by Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, POULTRY, in justifiable reliance on the representations, invested and/or secured investment capital of approximately $1,250,000.00 and tendered same to Defendants.

97. Defendant, AGROVIUM OC, Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, knew and/or recklessly made the material representations to POULTRY, notably, that Defendants had obtained the intellectual property rights to carry out the development, manufacturing, and commercialization of certain agricultural products, namely "Absorvia" and "PrimeButyrin", under the guise of a "Master License", which Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, knew that Defendants did not own the intellectual property rights for certain agricultural products, namely "Absorvia" and "PrimeButyrin", and further, that Defendants did not obtain the requisite license necessary to commercialize certain agricultural products, namely "Absorvia" and "PrimeButyrin".

98. Defendant, AGROVIUM OC, Defendant, SOFER, acting with and through KAYE, and the ALTER EGO DEFENDANTS, intended for POULTRY to rely upon the representations in agreeing to tender the total aggregate investment amount of $1,250,000 to Defendants and in entering into the Subscription Agreement.

Case 9:26-cv-80894-XXXX   Document 1   Entered on FLSD Docket 07/28/2026   Page 29 of 42

99. If POULTRY had known that Defendants did not own the intellectual property rights for certain agricultural products, namely "Absorvia" and "PrimeButyrin", and further, that Defendants did not obtain the requisite license necessary to commercialize certain agricultural products, namely "Absorvia" and "PrimeButyrin", then POULTRY would not have secured and subsequently tendered a total aggregate investment amount of $1,250,000.00 to Defendants, nor enter into the Subscription Agreement with Defendant, AGROVIUM OC.

100. As a result of Defendant, SOFER, acting with and through KAYE, and through its network of ALTER-EGO DEFENDANTS, having made false and fraudulent statements to POULTRY, and POULTRY having justifiably relied thereon to POULTRY's detriment, and further, due to no such intellectual property rights of certain agricultural products, namely, "Absorbia and "PrimeButryn", being owned by and/or licensed to Defendant, AGROVIUM OC, whereby making both the purpose of POULTRY's Subscription Agreement, and related joinder Agreements, impossible.

101. Upon discovering the acts of fraud, deceit and/or omissions by Defendant, SOFER, acting with and through KAYE, and through its network of ALTER-EGO DEFENDANTS, POULTRY sought to rescind the Subscription Agreement, and related joinder Agreements.

102. In doing so, POULTRY notified Defendant, AGROVIUM OC, Defendant, SOFER, acting with and through KAYE, and the ALTER EGO DEFENDANTS, of such rescission and requested the return of the total aggregate investment amount tendered to Defendants in connection with the Subscription Agreement, and related joinder Agreements.

103. However, Defendant, AGROVIUM OC, Defendant, SOFER, acting with and through KAYE, and the ALTER EGO DEFENDANTS, have failed and further refused to return the monies it received from POULTRY in connection with the Subscription Agreement, and related joinder Agreements.

104. POULTRY has no adequate legal remedy at law except for a rescission of the Subscription Agreement, and related joinder Agreements.

**WHEREFORE**, Plaintiff, POULTRY, demands a judicial declaration by this Honorable Court in its favor and against Defendants, AGROVIUM OC, and ABA AGRO, jointly and severally, for rescission of the Subscription Agreement, and related joinder Agreements *ab initio*, the return of the $1,250,000.00 previously tendered by POULTRY to Defendants, AGROVIUM OC, and ABA AGRO, plus applicable interest on the funds from March 24, 2026, and to enter such other orders and/or grant such further relief as this Honorable Court deems just and proper under the circumstances.

## COUNT VI

## CONVERSION[12]

### (POULTRY against AGROVIUM OC, ABA AGRO, and SOFER)

Plaintiff, POULTRY, sues Defendants, AGROVIUM OC, ABA AGRO, SOFER, and the ALTER-EGO DEFENDANTS, jointly and severally, and alleges that:

105.   This is an action for damages that are within the jurisdiction of this court.

106.   Plaintiff re-alleges and incorporates by reference paragraphs 1-34 as if fully set forth herein.

107.   Defendant, SOFER, acting with and through KAYE, represented that SOFER, through his network of affiliated companies, had obtained the intellectual property rights to carry out the development, manufacturing, and commercialization of certain agricultural products, namely "Absorvia" and "PrimeButyrin", under the guise of a "Master License", the rights of which were allegedly assigned and memorialized in a purported Exclusive License Agreement.

108.   Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, solicited POULTRY to invest in a new agricultural technology company, Defendant, AGROVIUM OC.

109.   In their representations to POULTRY, Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, embellished the business stature of Defendant, AGROVIUM OC, by exaggerating the credibility and capabilities of Defendant, AGROVIUM OC, namely, the "extensive range of

---

[12] *Metropolitan Life Ins. Co. v. Liebowitz,* 2022 WL 833635, *9 (M.D. Fla. Mar. 21, 2022);

cutting-edge agricultural products designed by AGROVIUM for farmers and live-stock producers", and that "AGROVIUM has 500+ trusted agricultural partners and is currently active in 13 countries with production in the [United States of America], Israel, United Kingdom, and the European Union". [13]

110.   Notably, in their representations to POULTRY, Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, represented that the investment capital would be used to fund the manufacturing, distribution and product trials for those certain agricultural products, "Absorvia" and "PrimeButyrin".

111.   On the strength of the representations made to POULTRY by Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, POULTRY, in justifiable reliance on the representations, invested and/or secured investment capital of approximately $1,250,000.00 and tendered same to Defendants.

112.   Upon information and belief, Defendant, SOFER, acting with and through KAYE, and through the ALTER EGO DEFENDANTS, intentionally exercised dominion over the total aggregate investment amount of $1,250,000.00, inconsistent with POULTRY's rights, by applying, diverting, and/or transferring the total aggregate investment amount of $1,250,000.00 for undisclosed purposes a for

---

[13] (https://www.agrovium.com/about-us/) (June 22, 2026).

the benefit of other Defendant, SOFER, and/or the ALTER EGO DEFENDANTS, thereby depriving POULTRY of its property.

113.   POULTRY demanded the return of the total aggregate investment amount of $1,250,000.00 on June 24, 2026, but Defendants have failed and refused to do so.

114.   As a direct and proximate result of Defendants having been wrongfully deprived of the money invested by and/or on behalf of POULTRY, POULTRY has suffered damages, and continues to suffer damages in the total aggregate investment amount of $1,250,000.00.

**WHEREFORE**, Plaintiff, POULTRY, demands judgment for damages against Defendants, SOFER, and the ALTER-EGO DEFENDANTS, jointly and severally, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

**COUNT VII**

**DECLARATORY JUDGMENT AND RESCISSION[14]**
**(ALAN FEEDING against ABA AGRO, BIOPRIME, and SOFER)**

Plaintiff, ALAN FEEDING, sues Defendant, ABA AGRO, BIOPRIME, and SOFER, and alleges that:

115.   This is an action for damages that are within the jurisdiction of this court.

116.   Plaintiff re-alleges and incorporates by reference paragraphs 1-34 as if fully set forth herein.

---

[14] [14] *Perna v. Am. Campus Cmtys, Inc.*, 2022 WL 1689083, \*3-5 (M.D. Fla. May 26, 2022);

117. The declaration sought concerns a present and ascertainable state of facts, including Defendants', ABA AGRO, BIOPRIME, and SOFER, refusal to rescind the Operating Agreement, and any such amendments thereto, Joinder(s), and related agreements between ALAN FEEDING and Defendants, ABA AGRO, BIOPRIME, and SOFER, as the respective agreements are voidable and subject to rescission as they were procured through material misrepresentation and for Defendant, BIOPRIME, having failed to make its required capital contribution under § 3.1(a) of the Operating Agreement of ABA AGRO.

118. ALAN FEEDING's rights to rescission, to be released from further performance under the Operating Agreement, and any such amendments thereto, Joinder(s), and related agreements between ALAN FEEDING and Defendants, ABA AGRO, BIOPRIME, and SOFER, and to be free from enforcement of the respective agreement, are directly dependent upon the Court's determination of the facts and law applicable to the material misrepresentations and material breach of the Operating Agreement of ABA AGRO, without the ability to cure, by Defendants, ABA AGRO, BIOPRIME, and SOFER.

119. An actual, antagonistic controversy exists between ALAN FEEDING, on the one hand, and Defendants, ABA AGRO, BIOPRIME, and SOFER, on the other, as Defendants assert the Operating Agreement, and any such amendments thereto, Joinder(s), and related agreements between ALAN FEEDING and Defendants, ABA AGRO, BIOPRIME, and SOFER remain valid and enforceable and that ALAN FEEDING is in default, while ALAN FEEDING contends that the respective

agreements are voidable, subject to rescission, and unenforceable as procured by material misrepresentation and for failure of consideration by Defendant, BIOPRIME.

120. The relief sought is not advisory but is necessary to resolve the parties' respective rights and obligations under the Operating Agreement, and any such amendments thereto, Joinder(s), and related agreements between ALAN FEEDING and Defendants, ABA AGRO, BIOPRIME, and SOFER, and to prevent Defendants from continuing to assert enforcement rights against ALAN FEEDING based on agreements procured through the material misrepresentations and without any such consideration having been tendered on behalf of Defendant, BIOPRIME.

**WHEREFORE**, Plaintiff, ALAN FEEDING, demand judgment against Defendants, ABA AGRO, BIOPRIME, and SOFER, jointly and severally, declaring pursuant to 28 U.S.C. § 2201 that: (a) the Operating Agreement, and any such amendments thereto, Joinder(s), and related agreements between ALAN FEEDING and Defendants, ABA AGRO, BIOPRIME, and SOFER, are voidable and subject to rescission as procured through material misrepresentation and for Defendant, BIOPRIME, having failed to make its required capital contribution under § 3.1(a) of the Operating Agreement of ABA AGRO; (c) ALAN FEEDING has no further obligations under the Operating Agreement, and any such amendments thereto, Joinder(s), and related agreements between ALAN FEEDING and Defendants, ABA AGRO, BIOPRIME, and SOFER; and (d) awarding ALAN FEEDING their attorneys'

fees, costs, and such further declaratory, injunctive, and equitable relief as the Court deems just and proper.

## COUNT VIII

### TEMPORARY AND PERMANENT INJUNCTION[15]
### (PLAINTIFFS against DEFENDANTS)

Plaintiffs, ALAN FEEDING, and POULTRY, sues Defendants and allege that:

121.  This is an action for damages that are within the jurisdiction of this court.

122.  Plaintiff re-alleges and incorporates by reference paragraphs 1-33 as if fully set forth herein.

123.  Defendant, SOFER, acting with and through KAYE, represented that SOFER, through his network of affiliated companies, had obtained the intellectual property rights to carry out the development, manufacturing, and commercialization of certain agricultural products, namely "Absorvia" and "PrimeButyrin", under the guise of a "Master License", the rights of which were allegedly assigned and memorialized in a purported Exclusive License Agreement.

124.  Notably, in their representations to POULTRY, Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, represented that the investment capital would be used to fund the manufacturing, distribution and product trials for those certain agricultural products, "Absorvia" and "PrimeButyrin".

---

[15] Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC, 904 F.3d 1197, 1214 (11th Cir. 2018).

125.   On the strength of the representations made to POULTRY by Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, POULTRY, in justifiable reliance on the representations, invested and/or secured investment capital of approximately $1,250,000.00 and tendered same to Defendants.

126.   Upon information and belief, and at all relevant times hereto, following Plaintiffs having become aware of the fraudulent misrepresentations, namely, that Defendants did not obtain the intellectual property rights to carry out the development, manufacturing, and commercialization of certain agricultural products, namely "Absorvia" and "PrimeButyrin", and prior to instituting this action, Plaintiffs requested Defendants for a rescission of their respective Subscription Agreement(s) and/or Operating Agreement(s), and for the immediate return of the investment capital previously tendered by and/or on behalf of Plaintiffs to Defendants, to no avail.

127.   Upon information and belief, and at all relevant times hereto, following Plaintiffs having become aware of the fraudulent misrepresentations, namely, that Defendants did not obtain the intellectual property rights to carry out the development, manufacturing, and commercialization of certain agricultural products, namely "Absorvia" and "PrimeButyrin", Plaintiffs have become aware that Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, continue to actively expend investor funds by engaging third-parties to provide services, facilities, product trials, and/or related activities in

connection with certain agricultural products, namely "Absorvia" and "PrimeButyrin", despite Defendants having no such rights to develop, manufacture, distribute and/or sell the respective agricultural product(s), "Absorvia" and/or "PrimeButyrin".

128.  Upon information and belief, and at all relevant times hereto, following Plaintiffs having become aware of the fraudulent misrepresentations, namely, that Defendants did not obtain the intellectual property rights to carry out the development, manufacturing, and commercialization of certain agricultural products, namely "Absorvia" and "PrimeButyrin", Plaintiffs were provided documentation by Defendant, SOFER, acting with and through KAYE, and through SOFER's network of affiliated companies, indicating a present intention of Defendants to place the respective assets of Defendants beyond the reach of the this Court, specifically, that the Defendants have full intention to migrate the assets of Defendants to "Cyprus or other foreign vehicle", an intention and declaration that has been confirmed in writing by Defendant, SOFER, directly.

129.  If Defendants are not immediately and permanently enjoined from using, transferring, migrating, and/or dissipating the investments funds in their possession, and engaging further in the acts and practices alleged herein, the continued activities of Defendants will result not only in immediate and irreparable damage to Plaintiffs, but also in irreparable injury to the public.

130.  The threatened injury to Plaintiffs and to the investing public from Defendants' continued dissipation of funds and repetition of false representations

related to the ownership of the intellectual property rights of certain agricultural products, substantially outweighs any legitimate harm to Defendants, who have no cognizable interest in continuing to use investor capital obtained by misrepresentation(s) or in repeating those misrepresentations to new investors.

131. The requested injunction serves the public interest by preventing further fraud upon prospective investors and by preserving the status quo pending adjudication of Plaintiffs' claims.

132. Plaintiffs face irreparable harm for which there is no adequate remedy at law if Defendants transfer, encumber, license, or migrate the disputed assets or dissipate the remaining funds, and because monetary recovery may be rendered illusory if the invested funds are depleted before judgment.

**WHEREFORE**, Plaintiffs, ALAN FEEDING, and POULTRY, demand: (a) the imposition of a constructive trust over all funds secured and paid by POULTRY and their traceable proceeds, all disputed membership units, and all disputed intellectual-property rights; (b) preliminary and permanent injunctive relief restraining Defendants from transferring, assigning, licensing, encumbering, or migrating such assets, including to any Cyprus or other foreign vehicle, pending final judgment; (c) requiring Defendants to provide an accounting of all funds received from Plaintiffs and their disposition; and (d) such other equitable relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial as to all issues so triable.

By:     **/s/ Ryan C. Wagner**

Ryan C. Wagner, Esq.
Florida Bar No. 109313
**WLG FIRM, PLLC**
Attorneys for Plaintiffs
110 SE 6th Street, Suite 1700
Fort Lauderdale, FL 33301
Tel: (954) 271-2424
Email: ryan@WLGFIRM.com

## VERIFICATION OF COMPLAINT

I, ALAN FLOYD, am a resident of the State of Texas, and am acting in my corporate capacity as the sole member of ALAN FEEDING LLC, a Co-Plaintiff in the above action. I have read the foregoing Verified Complaint and pursuant to 28 U.S.C.§ 1746(2) declare under penalty of perjury that the foregoing factual averments are true and correct to the best of my knowledge and belief.

By: _____

ALAN FLOYD, as sole member of ALAN FEEDING LLC, as *Co-Plaintiff*

State of FLORIDA        )
County of BROWARD    )

I HEREBY CERTIFY that on this day, before me, an officer duly qualified to take acknowledgments, personally appeared ALAN FLOYD, who hereby certifies that he is acting in his corporate capacity as the sole member of ALAN FEEDING LLC, and who is personally known to me. WITNESS my hand and official seal in the County and State last aforesaid this July 26, 2026.

_Abigail Castañeda_____        _____
Name of Notary Public                        Signature of Notary Public

My Commission Expires:

Abigail Hadassah Castañeda
My Commission Expires
6/6/2027
Notary ID 134394387

41

## <u>VERIFICATION OF COMPLAINT</u>

I, TOM FLOYD, am a resident of the State of Idaho, and am acting in my corporate capacity as the sole member of POULTRY LLC, a Co-Plaintiff in the above action. I have read the foregoing Verified Complaint and pursuant to 28 U.S.C.§ 1746(2) declare under penalty of perjury that the foregoing factual averments are true and correct to the best of my knowledge and belief.

By: _____
TOM FLOYD, as sole member of
POULTRY LLC, as *Co-Plaintiff*

State of ~~FLORIDA~~ IDAHO )
County of ~~BROWARD~~ Twin Falls )

I HEREBY CERTIFY that on this day, before me, an officer duly qualified to take acknowledgments, personally appeared TOM FLOYD, who hereby certifies that he is acting in his corporate capacity as the sole member of POULTRY LLC, and who is personally known to me. WITNESS my hand and official seal in the County and State last aforesaid this July 26, 2026.

BRIAN AVRAM
_____
Name of Notary Public

_____
Signature of Notary Public

My Commission Expires: 1/23/30

BRIAN AVRAM
COMMISSION NO. 44622
NOTARY PUBLIC
STATE OF IDAHO
MY COMMISSION EXPIRES 1/23/2030

42